THOMAS S. CATHCART, Appellant, v. JAMES G. GRIEVE, JANET GRIEVE, and JOHN POLLOCK.

**Fraudulent Conveyance:** RIGHTS OF CREDITORS. A creditor has the right to secure himself, though he knows that in so doing he will delay other creditors in the collection of their claims, unless he participates in a fraudulent intent by the debtor.

**BADGES.** Mere relationship between the parties to a transfer is not a badge of fraud, as against creditors, which calls for explanation.

**DEEDS AS MORTGAGE:** *Consideration.* Inadequacy of consideration for a deed is not material on the question of fraud as against the grantor's creditors, where the deed, though absolute on its face, was intended as a mortgage.

**SECRET TRUST:** *Rental.* The execution of a lease, by a grantee to the grantor, is not a badge of fraud as against the grantor's creditors, when the lease containing such reservation is duly recorded.

**EVIDENCE.** Shortly before judgment was obtained against him, an insolvent debtor deeded land to his uncle, who lived at a remote distance, for an adequate consideration, and at the same time he leased the land of his uncle at a fair rental, and the deed and lease were recorded together. The grantor occupied the land under the lease the succeeding year. The deed, though absolute in form, was in fact a mortgage, and the rent reserved in the lease was intended as additional security. At about the same time, the grantor mortgaged all his property to other creditors, including a chattel mortgage to his uncle. The uncle knew only of the indebtedness to others, recited in the instruments made to him. No concealment was made of the deed's being a mortgage, and, when questioned, the parties declared it to be a mortgage. *Held,* that the conveyance was not fraudulent as to the judgment creditor.

**Cross Petitions:** NOTICE. In an action to set aside a mortgage as in fraud of creditors, where the defendant mortgagee seeks by cross petition to have the mortgage foreclosed, he must serve the cross petition on the defendant mortgagor.

**PROOF UNDER.** When the defendant mortgagee, in an action to set aside a mortgage as in fraud of creditors, seeks by cross petition to have the mortgage foreclosed, and the averments of such petition are denied in the reply, there can be no foreclosure, in the absence of proof of the allegation of the cross petition.

*Appeal from Clay District Court.*—HON. W. B. QUAR
TON, Judge.

## WEDNESDAY, JANUARY 19, 1898.

CREDITOR's bill to subject certain real estate, the
legal title to which is in defendant John Pollock, to the
payment of a judgment held by plaintiff against James
G. Grieve. Defendants pleaded that the conveyance of
the land from Grieve and wife to Pollock was intended
as a mortgage to secure Pollock for money loaned, and
denied all fraud in the transaction. The trial court dismissed the petition, and plaintiff appeals.—*Reversed* in
part and *affirmed* in part.

*Kinkead & Kinkead* and *Dale, Kinkead & Bissel*
for appellant.

*F. H. Helsell* for appellees.

DEEMER, C. J.—Plaintiff obtained his judgment
against James G. Grieve on March 6, 1895, upon a debt
contracted in the year 1894. On the twenty-fifth day of
February, 1895, Grieve (his wife, Janet, joining) conveyed, by warranty deed, four hundred and thirty-nine
acres of land in Clay county to defendant John Pollock,
for the expressed consideration of two thousand six
hundred dollars. The deed recites that it is subject to
two mortgages, amounting, in the aggregate, to seven
thousand four hundred dollars. This deed was recorded
March 2, 1895. At the same time, and evidently as a
part of the same transaction, Pollock executed a lease
to Grieve of all the land described in the deed, for the
term of one year, at the agreed rental of eight hundred
dollars. This lease was also recorded on March 2, 1895.
The defendants pleaded that this transaction was in
fact a mortgage to secure a debt due from Grieve to

Pollock. At or about the same time, Grieve gave Pollock a chattel mortgage upon some personal property, to secure the sum of one thousand and thirty dollars. Grieve also mortgaged his property, of every kind or nature, to other of his creditors, on or about the same date. Appellant claims that the conveyance and mortgage to Pollock are fraudulent and void, because made with intent to hinder, delay, and defraud creditors. On account of the loose manner in which the case was tried in the court below, it is difficult to get at the real facts. Plaintiff proved the indebtedness of Grieve; the recovery of judgment against him; the execution of the deed, lease, and chattel mortgage to which we have referred; that Pollock is a resident of Scott county, and an uncle of Grieve; that Grieve is insolvent, and has been since the execution of the conveyances in question; and that, about the time of these conveyances, Grieve executed two other chattel mortgages to residents of Clay county, to secure debts purporting to amount to over one thousand seven hundred dollars. Plaintiff also proved that the deed to Pollock, and probably the lease, were executed at Davenport, in Scott county, and that the land was worth twenty-five dollars per acre. This is substantially all the evidence that was adduced, save that Grieve was in possession and occupancy of the land during the year 1895. At the conclusion of plaintiff's evidence, defendants moved for judgment dismissing the petition, because there was no evidence of fraud, and no showing that the deed was anything other than an absolute conveyance. Thereupon plaintiff offered in evidence the admission in defendants' pleadings that the deed was a mortgage. This was objected to, because offered after plaintiff had rested, and after the motion for judgment had been made. At this stage of the proceedings, court adjourned. We find the following record made the next morning: "Mr. Kinkead: This now is the incoming of court, nine o'clock this morning, and the motion having

been made last night, on its coming on now for hearing
and announcement of the decision of the court, before
that announcement is made, the plaintiff in this case
desires to place upon record the following: 'Motion No.
2, Comes now the plaintiff, pending the defendants'
motion for decree and judgment as hereinbefore stated,
and withdraws from the evidence in this case the
answer and amended and substituted answer of
the defendants, and the offer in evidence here-
tofore made of the same in this case by the plaintiff.
Plaintiff also further withdraws from the evidence the
deed, and his offers hereinbefore made of the same, and
all the record thereof in the evidence, and which deed is
mentioned in the plaintiff's petition in this case, as
Exhibit A. And plaintiff now moves the court, upon the
record in this case, to render judgment and decree for
the plaintiff against the said James G. Grieve, Janet
Grieve, and John Pollock, as demanded in the prayer of
plaintiff's petition filed herein March 16th, 1895.'" Fol-
lowing this were some more motions and objections on
behalf of defendants, and the court finally made this
ruling: "The motion to withdraw the deeds from the
record, and the answers from the record, as indicated
in motion number two, is overruled, because the said
motion is made after the cause is fully submitted to the
court and argued by the counsel to the court; and the
court has indicated to both counsel what its opinion
would be in this case, and directed a decree, declaring
that the deed was in fact a mortgage, establishing Pol-
lock's lien to the amount claimed in the answer, declar-
ing that plaintiff's judgment was a lien junior to the
claim of Pollock, and directing foreclosure and sale of
the premises." There are no assignments of error, and
we must try the case anew on this record, assuming, of
course, that the rulings on the motions, except in so
far as they involve the merits, are correct.

The burden is upon the plaintiff to establish the fraud pleaded by him, and evidence which merely raises a suspicion is not sufficient. Certain badges of fraud are relied upon; but appellant concedes that the rule in this state is that none of the many badges of fraud usually relied on are regarded as conclusive, citing a number of our cases. Among the badges so relied upon are: First, the relationship of the parties; second, the fact that there was a secret trust created by the lease; third, such inadequacy of consideration as indicates fraud or renders the conveyance voluntary; fourth, the making of an absolute conveyance when security only was intended; fifth, execution of a series of instruments covering all the grantor's property at a time when he was insolvent, and shortly before the recovery of plaintiff's judgment.

It has frequently been held that mere relationship alone is not a badge of fraud which calls for explanation. *Oberholtzer v. Hazen*, 92 Iowa, 602; *Allen v. Kirk*, 81 Iowa, 668. Here the relationship was somewhat distant, and the parties lived remote from each other; and, in addition, there is not the slightest evidence that Pollock knew that Grieve was indebted except as shown in the instruments given him, which referred to some prior debts and incumbrances.

The lease given to Grieve by Pollock was recorded at the same time as the deed, and was not kept secret. The evidence tends to show that Grieve was to pay the rent reserved, and that at the time of the trial he had part of the money deposited in a bank with which to pay it. Such transactions are not uncommon; and the rent reserved is treated as additional security for the payment of interest or interest and principal. See *Rogers v. Davis*, 91 Iowa, 730; *Jordan v. Lendrum*, 55 Iowa, 483; *Smith v. Mack*, 94 Iowa, 539. The case differs essentially from *Macomber v. Peck*, 39 Iowa, 351, relied upon by appellant. In that case there was

no recorded lease, and a part of the consideration for the conveyance was an agreement that the grantor should use and occupy the land for three or four years without rent. This part of the consideration was not mentioned in the deed. The conveyance was held fraudulent because of the secret reservation securing a benefit to the grantor at the expense of his creditors. Neither is the case of *Graham v. Rooney*, 42 Iowa, 567, in conflict with the views expressed in this opinion. In that case a part of the consideration was an agreement for future support of the grantees; in other words the secret reservation of a beneficial interest in the property. Such conveyances are universally held to be fraudulent. *Harris v. Brink*, 100 Iowa, 366; *Strong v. Lawrence*, 58 Iowa, 55.

No such secret trust is established as will justify us in declaring the conveyance fraudulent. The land was worth, when transferred, something over ten thousand dollars. The consideration expressed in the deed was two thousand six hundred dollars; but the land was taken subject to incumbrances amounting to seven thousand four hundred dollars. It is true, there is no direct evidence of the existence of these mortgages. The deed was offered by the plaintiff however, and defendants are not in position to deny the statement therein that the land was so incumbered. If it was so incumbered, then the consideration is adequate. Plaintiff offered no evidence as to the consideration in fact paid, except as we have stated, and made no attempt to prove that the land was unincumbered. Moreover, if it be true that the deed was intended as a mortgage,, inadequacy of consideration is of no moment in determining the issue of fraud. The conveyance was not voluntary.

The fact that the conveyance was absolute, instead of conditional, is undoubtedly a badge of fraud, and

should be regarded with suspicion. *Fuller v. Griffith,* 91 Iowa, 632. In the case at bar, however, there was no disguise or concealment of the character of the transaction. When questioned, the parties immediately declared it to be a mortgage, and, except in the motion made, have at all times, when required, disclosed its purpose. The motion was made during the progress of the trial, and was based upon an alleged failure of proof on the part of the plaintiff. There was no disguise in this. True, it is that the defendants did not go upon the witness stand in their own behalf to explain the transaction. Plaintiff relieved them of this privilege, to some extent at least, by introducing in evidence their admission in answer that the transaction was a mortgage. But aside from all this, the consideration was nearly, if not quite, the full value of the property. And there is no evidence whatever that defendant Pollock knew or had any intimation that defendant Grieve was financially embarrassed, except as he gained it from the statement in the deed with reference to the mortgages upon the land. As a creditor, Pollock had the right to secure himself, even if he knew that, in so doing, other creditors would be delayed in the collection of their claims. Security given to such a creditor will not be declared fraudulent, unless he participated in an intent to defraud other creditors. The rent reserved is not shown to have been inadequate, and there has been no deceit or dissembling in the transaction, except in this: that the conveyance was absolute in form, instead of a pledge or mortgage. In the *Fuller-Griffith Case, supra,* we said that a deed absolute on its face may be shown to be a mortgage; "yet, as to creditors, the transaction must be clean and clear as a conveyance for permanent ownership." The conveyance was of that kind, and is not fraudulent simply because absolute in form. See, also, *Stevens v. Hinckley,* 43 Me. 441.

What we have hitherto said largely answers the last claim made by plaintiff; for, if Pollock was a creditor of Grieve, he had a right to secure himself even if Grieve was insolvent, and this he could do even if the effect of the conveyance was to hinder and delay other creditors. That he took the conveyance as a mortgage was proved by the plaintiff in introducing the admission; and there is no proof whatever that Pollock participated in any fraudulent intent on the part of Grieve, even if such fraudulent intent were established.

II. The defendants, as we have seen, pleaded that the conveyance was a mortgage to secure certain sums advanced by Pollock. Pollock also filed a cross-petition, asking that the amounts be established, and that a decree be entered declaring the instrument to be a mortgage, and asking for a foreclosure of the same. He did not serve notice of his cross-petition upon his co-defendant, nor did he introduce any evidence upon the trial as to the amount of his advancements. The trial court undertook to establish them, however, and granted a decree of foreclosure as prayed. The only evidence tending to support defendants' claim was introduced by plaintiff and this did not go to the extent of the indebtedness. The evidence introduced by plaintiffs touching this matter had reference simply to the fact that defendants admitted that the conveyance was in fact a mortgage instead of an absolute deed. The trial court did not have sufficient evidence before it from which to determine and fix the amount of the advancements made, and could not, for that reason alone, grant the decree prayed in defendants' cross-bill. As Pollock introduced no evidence to establish the allegations of his cross-bill, he was not entitled to a decree upon the

statements contained therein, for the reason that they were denied in the reply. Again, he was not entitled to a decree of foreclosure, for the reason that Grieve had no notice of the cross-petition. We may also observe, in passing, that we doubt whether he was entitled to such decree under the prayer of his petition. In so far as the decree fixes the amount of the advancement made by Pollock, and directs the foreclosure and sale of the premises, it is reversed, and will be remanded to the court below for further proceedings in harmony with this opinion; and so far as it declares the conveyance to Pollock to be a valid and subsisting mortgage for the amount actually found due him upon subsequent proceedings, prior and superior to the plaintiff's judgment, it is affirmed. The parties plaintiff and defendant will each pay one-half the costs of this appeal.—REVERSED in part and AFFIRMED in part.